IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEAN JOHNSON,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

14-cv-0029-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Dean Johnson is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for supplemental security income under the Social Security Act.  42 U.S.C. § 405(g).  The administrative law judge who decided the case concluded that plaintiff suffered from the severe impairments of ankylosing spondylitis (by history with HLA B27+, improved with Enbrel) and degenerative changes in the lumbar spine that prevented him from performing his past work as a grocery stocker, hotel maintenance worker and general laborer, but he retained the residual functional capacity to perform the job of order clerk or receptionist and information clerk. Plaintiff contends that the administrative law judge did not properly evaluate whether his impairment is medically equal in severity to a listed impairment, improperly found that his hearing loss and mental impairments were not "severe," erred in finding plaintiff not credible and failed to ensure at step five that the vocational expert's testimony was reliable.  Although I reject most of plaintiff's arguments, I agree that the administrative law judge erred at step

five.  Accordingly, I am granting plaintiff's motion for summary judgment and reversing and remanding the administrative law judge's decision for a new step five determination.


BACKGROUND

A.  Plaintiff's Treatment

Plaintiff, who was 42 years old at the time of the administrative hearing, lives alone in an apartment in Chippewa Falls, Wisconsin.  He has a college degree in applied technology manufacturing systems but worked only briefly in that field.  Since approximately 2008, he has been self-employed as a guitar teacher, earning approximately $4,000 to $5,000 a year.  He supplements his income with assistance from various public programs.

Plaintiff has a history of back pain dating back to the 1980s.  In mid-2010, plaintiff had a magnetic resonance imaging scan that showed mild degenerative changes with some anterior sclerosis (hardening of the tissue) in the lumbar spine.  A few months later, a test of plaintiff's blood showed that he carries the HLA-B27 gene, a marker for ankylosing spondylitis.  Ankylosing spondylitis is an inflammatory disease that, in severe cases, can cause vertebrae of the spine to fuse together.  Although the primary symptoms are pain and stiffness in the lower back and hips, the disease may affect other joints and sometimes other organs such as the eyes, bowel, heart and lungs.  See http://www.niams.nih.gov/Health_Info/Ankylosing_Spondylitis/ankylosing_spondylitis_ff.asp (last visited October 15, 2014).  The pain and stiffness associated with the disease can wax and wane and can range from mild to severe.

In addition to his back pain, plaintiff has a history of pain and swelling in his right ankle. He was seen and evaluated for this condition by an internist, Dr. Dharmesh Babaria, who referred him to a podiatrist. Dr. Babaria's initial diagnosis was gouty arthritis. However, he later informed plaintiff that his ankle symptoms were likely related to the ankylosing spondylitis.

Plaintiff was evaluated for his ankylosing spondylitis by a rheumatologist, Dr. Marlon Navarro. Dr. Navarro examined plaintiff in July 2010 and noted that his gait was normal and that his joints were not swollen, tender or unstable, with the exception of two toes and the Achilles tendon area of the right foot. Plaintiff said he had pain in his lower back and thoracic region with bending over and movement, and that his back felt stiff and tight when he was just sitting still. Navarro reviewed plaintiff's MRI's and x-rays and did not observe any obvious SI joint changes, but saw some suggestion of a fusion at L4 and L5. X-rays of plaintiff's chest and ankle were unremarkable.

Dr. Navarro noted that plaintiff was HLA-B27 positive and had spondyloarthropathy. He recommended that plaintiff try an injectable drug called Enbrel. Although plaintiff initially declined because of an aversion to needles, he eventually began taking the drug in January 2011. On January 25, 2011, plaintiff reported that his baseline pain or stiffness had not changed, but that he had not had any flare-ups since starting the weekly Enbrel injections.

In March 2011, plaintiff consulted a neurosurgeon, Dr. James Freeman, who found no evidence of any radiculopathy or other condition requiring surgical intervention.

3

On March 30, 2011, plaintiff told his primary care physician that he thought the Enbrel was helping his pain somewhat. In addition to the Enbrel, plaintiff received physical therapy and a regimen of home exercises for his back pain and stiffness. By June 2011, plaintiff's pain had decreased and his mobility had improved; he was discharged from physical therapy in July 2011.

At a June 28, 2011 office visit, plaintiff told Dr. Navarro that although he still had some dull, aching lower back pain that he rated about a 4 out of 10, it only hurt with use and not when he was sitting. Plaintiff had medication patches that he said helped with this residual pain. On examination, plaintiff had good strength in his upper and lower extremities, normal gait, good joint stability and good range of motion of the cervical and lumbar spine with no palpable tenderness. Dr. Navarro noted that plaintiff had improved on the Enbrel and was not showing any signs of medication toxicity from the drug.

On February 28, 2012, Dr. Navarro noted again that plaintiff had been tolerating the Enbrel well and that his range of motion and stability were good.

In April 2012, plaintiff was referred to skilled physical therapy for left shoulder pain. With therapy, plaintiff's symptoms improved somewhat, but not entirely.

In addition to his back, ankle and left shoulder pain, plaintiff was evaluated or treated in 2010-2011 for a number of other conditions, including irritable bowel syndrome, tachycardia, seasonal allergies and depression.

Plaintiff applied for Supplemental Security Income payments on July 4, 2010, alleging that he was unable to work because of a number of impairments, including

ankylosing spondylitis, gout and depression.  After his claim was denied initially and on reconsideration, plaintiff requested an administrative hearing, which was held via video teleconference on July 19, 2012.

## B.  Plaintiff's Testimony

Plaintiff, who appeared with counsel, testified at the hearing.  Plaintiff said that although at one time he had had 30 guitar students, at the time of the hearing he had only five.  According to plaintiff, he could not take on more students or persist at any full time job because he has "really bad days" when he must drastically reduce his activity and treat his pain with ice, heat or medication.  Plaintiff said he had pain in his ankles, shoulder and mid-back, and that he often had to change positions to help relieve the pain.  He said, however, that his medications were helping his symptoms.

## C.  Vocational Expert Testimony

Vocational expert Allen Noll testified at the hearing.  Although Noll's qualifications are not in the record, plaintiff's lawyer did not challenge them or object to his testimony. AR 47.  After plaintiff testified, the administrative law judge posed a hypothetical question to Noll that asked him to assume an individual limited to unskilled, sedentary work (lifting ten pounds occasionally, five pounds frequently, standing or walking two hours of an eight-hour day and sitting six hours of an eight-hour day) with only occasional stooping and occasional reaching on the left, non-dominant side.  Noll testified that such an individual

5

would be unable to perform plaintiff's past work. (Guitar teaching was not included in the past work analysis because the administrative law judge found that plaintiff had not performed it at the substantial gainful level. AR 63; 20 C.F.R. § 416.960(b)(1)(to meet definition of past relevant work, work must have been substantial gainful activity)). The administrative law judge then asked whether there were any other jobs that the hypothetical person could perform. Referring to the <u>Dictionary of Occupational Titles</u>, Noll responded:

> The stooping [sic] is required at a frequent level in almost all the unskilled position areas. They don't separate out left from right, or dominant/non-dominant, so I'll try to pull some out that would be, I guess primarily one-handed type of operations, if there are some.

AR 66. The administrative law judge's colloquy with Noll proceeded as follows:

> ALJ:  You can choose me a little mixing in the stooping and the –
>
> VE:  No –
>
> ALJ:  Left/right – oh, all right.
>
> VE:  – the reaching–
>
> ALJ:  Uh-huh?
>
> VE:  – is a frequent requirement, according to the DOT, in just about all the unskilled work–
>
> ALJ:  I see.
>
> VE:  –but they don't divide it by bilateral or unilateral, or non-dominant –
>
> ALJ:  Uh-huh.  All right.
>
> VE: – so I'm going to run–
>
> ALJ:  That's why we have you, to give a [INAUDIBLE] --

6

VE:  I know, okay, I'm working on it here.

ALJ:  Don't rush.

. . . . . .

VE:  There are some sedentary, unskilled Order Clerks that would – let me – I guess – let's see – so, there would be some positions – there are approximately 700 in the state and they would not appear to be extensive reaching, and the – I'm sorry – okay, so "frequent" isn't allowable.  Now, there's – there would be some purchasing type positions that would be –

ALJ:  Did you rule out Order Clerks?  You said "I'm sorry," I didn't know–

VE:  Well, yeah, I'm bouncing here between four different references.  Some Order Clerk positions would probably be acceptable –

ALJ:  Right.

VE: – but it would be less than the full amount available.  Perhaps four to five hundred positions, and then the Receptionist and Information Clerks, again, sedentary, there would be about 1,200 in the state, and some of which would require some more than occasional reaching bilaterally, but not all, so I would take that number at about 800 for the state of Wisconsin, and that would be the limit of unskilled work, out of about 20 work groups.

ALJ:  All right, and nationally, how would you extrapolate, I guess, from the state numbers, since this is a national program?
VE:  Sure.  It would be about a thousand Order Clerks nationally, and about three to four thousand Receptionists.

AR 65-67.

Counsel for plaintiff then cross-examined the vocational expert as follows:

Counsel:  And, do both the Order Clerks and the purchasing jobs– you're saying that you're – some of them require more than occasional reaching, and so you're estimating how many wouldn't?

VE:  Well, what I'm estimating is, all of them require frequent reaching, but would some of them only require unilateral versus bilateral, because we don't– the restriction is strictly on the non-dominant left.

7

Counsel:  All right.  And so you're extrapolating – well, strike that– you're making an estimate out of the total number of these jobs how many there might be that a person can do with only occasional reaching with that left arm, is that correct?

VE:  Exactly.

Counsel:  And these are– this is basically an estimate, right?

VE:  Yes.

AR 67-68.  Neither counsel nor the administrative law judge asked Noll to explain the foundation for his estimates.

### D.   The Administrative Law Judge's Decision

In denying plaintiff's claim, the administrative law judge applied the familiar five-step sequential evaluation process.   At step one, after noting that the record contained inconsistent evidence concerning plaintiff's self-reported income from guitar teaching, he gave plaintiff the benefit of the doubt and concluded that plaintiff had not engaged in substantial gainful activity after his application date.  At step two, he reviewed plaintiff's various impairments and concluded he had the following "severe" impairments:   1) ankylosing spondylitis by history with HLA B27+, improved with Enbrel; and 2) degenerative changes in the lumbar spine.  Although noting that plaintiff had a host of other ailments and conditions for which he had been treated, including depression, the administrative law judge found none of these impairments to be severe.

At step three, the administrative law judge concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one

8

of the "listed" impairments deemed severe enough by the Social Security Administration to be presumptively disabling.  As a result, the administrative law judge moved to an assessment of plaintiff's "residual functional capacity" to determine whether he could perform his past work, or, if not, any other work that existed in significant numbers in the regional or national economy.

The administrative law judge determined that plaintiff retained the functional capacity to perform unskilled, sedentary work that did not require the performance of reaching tasks with his upper left arm more than occasionally.  In making this conclusion, the administrative law judge relied on the opinions of the Disability Determination Service physicians who had evaluated plaintiff's claim and found that he could perform sedentary work, reasoning that these opinions were consistent with the overall medical evidence and not contradicted by any other medical opinions in the record.  He rejected plaintiff's testimony of more severe restrictions, finding it to be inconsistent with the objective medical evidence and plaintiff's earlier statements to the Social Security administration, which he found indicated a much broader range of activity than was suggested by his hearing testimony.  Although the administrative law judge agreed that plaintiff's impairments could reasonably be expected to cause the symptoms of which he complained, he found plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment."

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was unable to perform his past relevant work.  He found, however, that plaintiff could perform the jobs of order clerk and receptionist or information clerk and that these jobs existed in significant numbers in the regional and national economy.  Accordingly, he found at step five of the sequential evaluation process that plaintiff was not disabled.

OPINION

A.  Standard of Review

This court's role in disability cases is limited to determining whether the administrative law judge's decision is supported by substantial evidence and free of legal error.  Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." McKinzey v. Astrue, 641 F.3d 884, 889 (7th Cir. 2011) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The substantial evidence standard requires the administrative law judge to build a logical bridge between the evidence and his conclusion, but not necessarily to provide a comprehensive written evaluation of every piece of evidence in the record.  Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013).  In asking whether the administrative law judge's decision has adequate support, this court will not reweigh the evidence or substitute its own judgment for that of the administrative law judge.  Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012).

10

### B.  Step Three:  Listing of Impairments

At step three of the five-step process for evaluating disability claims, the administrative law judge must determine whether plaintiff's impairment meets or equals one of the impairments listed by the Social Security Administration.   20 C.F.R. § 416.920(a)(4)(iii).  Plaintiff has the burden of showing that his impairments meet or medically equal a listing.  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990); Scheck v. Barnhart, 357 F. 3d 697, 700 (7th Cir. 2004).  To establish an impairment or combination of impairments that match or are equivalent to a listed impairment, plaintiff must present medical findings that meet or are equal in severity to all of the criteria in a listing.  Zebley, 493 U.S. at 530-31 (citing SSR 83-19 and 20 C.F.R. §416.926(a)).  When the plaintiff presents evidence suggesting that his impairment meets a listing, the administrative law judge should mention in his decision the specific listings he is considering and do more than analyze perfunctorily whether plaintiff's impairment meets or medically equals that listing.  Ribaudo v. Barnhart, 458 F.3d 580, 583(7th Cir. 2006); Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004); Brindisi v.Barnhart, 315 F.3d 783, 786 (7th Cir. 2003).  When, however, the plaintiff fails to come forth with any evidence showing that he meets a listing, the administrative law judge need not conduct a detailed analysis and may rely on Disability Determination and Transmittal Forms signed by the state agency doctors as proof that plaintiff does not meet a listing.  Scheck, 357 F.3d at 700-01.

Plaintiff argues that the administrative law judge erred in failing to consider adequately whether he met or medically equaled the listing for ankylosing spondylitis,

11

Listing 14.09.  To meet this listing, plaintiff had to produce medical evidence of the following:

> C.  Ankylosing spondylitis or other spondyloarthropathies, with:
>
>> 1.  Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
>>
>> 2.  Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

In his decision, the administrative law judge discussed only briefly the question whether plaintiff had a listed impairment, stating:

> Consistent with a lack of marked neurological signs or other durational medical findings corroborating chronic body system dysfunction, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

AR 27.

I agree with plaintiff that the administrative law judge should have provided a more thorough discussion of the issue and tied his decision to the language of the listing; at the least, he should have mentioned the term "ankylosing spondylitis."  Nonetheless, I am satisfied that he gave adequate consideration to whether plaintiff's condition met or medically equaled a listed impairment.  His use of the term "chronic body system dysfunction" suggests that he properly considered the listings for autoimmune disorders (of which ankylosing spondylitis is one).  20 C.F.R. Part 404, Subpt. P, App. 1, 14.00 Immune

System Disorders, A.1. ("We evaluate immune system disorders that cause dysfunction in one or more components of your immune system."). Further, as in <u>Scheck</u>, the record contains disability determination and transmittal forms that indicate that the state agency doctors found that plaintiff did not meet a listed impairment.

Finally, plaintiff has not identified substantial evidence in the record to support his listings argument. Plaintiff merely points to physical therapy records noting that he had a reduced range of motion in his cervical and lumbar spine. To satisfy the listing, however, the requisite fixation of the spine must be shown by medically acceptable imaging studies and measured on physical examination. Plaintiff does not identify where such evidence appears in the record. Accordingly, there is no reason for the commissioner to undertake a more thorough step three analysis. <u>Accord</u> <u>Scheck</u>, 357 F.3d at 700-01(remand for more detailed examination of medical evidence not required where plaintiff did not present substantial evidence to contract agency's position on issue of medical equivalency).

## C. <u>Step Four:  Residual Functional Capacity Assessment</u>

Plaintiff raises a number of challenges to the administrative law judge's determination that he retains the residual functional capacity to perform sedentary work provided it requires no more than occasional stooping and occasional reaching with the left, non-dominant side.

First, plaintiff points to remarks made by the administrative law judge at the hearing that he says suggest that the administrative law judge may not have fully understood the

nature of plaintiff's impairment.  E.g., AR 51 (asking plaintiff whether his back problems resulted from an accident) and 53 (indicating that he thought plaintiff had had spinal fusion surgery).  Although I agree that the administrative law judge's questions suggest a lack of familiarity with plaintiff's medical impairments at the time of the hearing, there is nothing in the decision to suggest that, by the time he wrote it, the administrative law judge did not understand plaintiff's impairments.  To the contrary, the administrative law judge credited the diagnosis of ankylosing spondylitis and observed that "a certain amount of significant spinal and immune system pathology is represented by the documentary medical record."  AR 29.  Indeed, the administrative law judge found that because of his impairments, plaintiff was capable of performing only a limited range of sedentary work, thereby acknowledging that plaintiff had rather severe impairment-related limitations.  Overall, I am satisfied that the administrative law judge properly understood the nature of plaintiff's impairments.

Second, plaintiff argues that the administrative law judge erred in failing to include restrictions due to hearing loss in the residual functional capacity assessment.  Again, this argument is not persuasive.  As the administrative law judge pointed out in his decision, plaintiff reported to his internist that he was doing "fine" with his hearing aids, he did not always wear them and in fact was able to answer questions at his hearing even though he was not wearing his hearing aids at that time.  Plaintiff points out that plaintiff told his audiologist that he had difficulty hearing in loud environments even while wearing his hearing aids, but there is no evidence that any of the jobs identified by the vocational expert would be performed in a noisy environment.

14

Third, plaintiff argues that the administrative law judge erred when he concluded that plaintiff suffered from at most mild mental limitations.  According to plaintiff, the administrative law judged placed too much weight on plaintiff's relatively high Global Assessment of Functioning score and failure to attend psychotherapy on a regular basis.  It is true that the Court of Appeals for the Seventh Circuit has questioned the relevance of Global Assessment of Functioning scores and has urged administrative law judges to consider reasons why a claimant may fail to obtain treatment when assessing a claimant's mental limitations.  Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (social security regulations do not require administrative law judges to assess disability based on GAF scores); Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) (although history of sporadic treatment or failure to follow a treatment plan can undermine claimant's credibility, ALJ must first explore claimant's reasons for lack of medical care before drawing negative inference) (citing Soc. Sec. Ruling 96-7p).  In this case, however, plaintiff's Global Assessment of Functioning Score and his lack of regular psychotherapy were only two of many pieces of evidence upon which the administrative law judge relied in support of his conclusion that plaintiff had only mild mental limitations.  The administrative law judge also noted that

- plaintiff maintained a wide array of daily activities that included driving, teaching guitar lessons to multiple students, practicing guitar, completing work-related paperwork, playing chess, reading magazines, surfing the internet, making phone calls, watching TV, doing laundry, going to the pool at the Y and visiting with friends;

- plaintiff maintained a long term relationship with his significant other, visited with friends and taught guitar to multiple students;

15

- evaluation for attention deficit hyperactivity disorder was negative, examiners generally noted plaintiff's attention span and concentration to be "normal", and plaintiff engaged in various activities (teaching and practicing guitar, paying bills, etc.) that suggested at most mild limitations in concentration, persistence and pace; and

- plaintiff had reported that his depression had improved with medication.

All of this evidence amply supports the administrative law judge's conclusion that plaintiff's mental limitations were only mild, even if one disregards his remarks about plaintiff's Global Assessment of Functioning Score and lack of psychotherapy.

Plaintiff also argues that the administrative law judge ignored a personality assessment inventory that was administered by Dr. Kanz. The results of the inventory suggested that plaintiff saw his life as disrupted by physical functioning and health problems, had little motivation and was interpersonally withdrawn. Contrary to plaintiff's suggestion, however, the findings do not appear to represent Dr. Kanz's medical opinion of the severity of plaintiff's mental limitations but rather were based upon plaintiff's own responses to a personality questionnaire. In light of the evidence cited above, I am satisfied that, notwithstanding plaintiff's reported lack of motivation and social interaction, the administrative law judge did not err in finding that, overall, plaintiff's mental limitations were only mild. Furthermore, notwithstanding the relatively sparse evidence of mental limitations, the administrative law judge found that plaintiff—who has a college degree—was limited to performing unskilled work, thus indicating that the administrative law judge gave some credence to plaintiff's allegations of mental fatigue and concentration problems.

Finally, plaintiff argues that the administrative law judge made a number of errors in finding that plaintiff's allegations of disabling limitations were not entirely credible.  It is well-settled that the administrative law judge's credibility determination generally will not be overturned unless it was "patently wrong."  Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).  I am unable to find that standard met here.  The administrative law judge found that plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that his complaints concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with an ability to perform a limited range of sedentary, unskilled work.  AR 30.  In reaching this conclusion, the administrative law judge considered various factors, including the objective medical evidence, plaintiff's medical treatment, prescribed medications, activities of daily living, work history and various statements made by plaintiff in forms submitted in connection with his application.  More specifically, the administrative law judge found that:

- plaintiff alleged on one of his disability forms that he could not sit for more than 20 minutes, but was able to remain seated without noticeable distress for more than 30 minutes during the hearing;

- plaintiff engaged in a variety of daily activities, including driving, preparing simple meals, teaching guitar to at least 5 students, practicing guitar, completing paperwork, playing chess, doing laundry and going to the Y;

- plaintiff's gait and station were observed to be normal during examinations;

- plaintiff's condition had improved on Enbrel;

- the Disability Determination Service physicians had found plaintiff capable of performing sedentary work and there was no medical opinion to the contrary.

Plaintiff argues that the administrative placed undue weight on plaintiff's various daily activities without considering how he performed them or how they undermined his allegations.  The Court of Appeals for the Seventh Circuit has cautioned "that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."  Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013).  In this case, however, the administrative law judge did not find that plaintiff's activities were consistent with full-time work, but observed only that they "appear[ed] very inconsistent" with some of the extreme limitations that plaintiff had reported.  Although it would have been helpful for the administrative law judge to better articulate these inconsistencies, they are fairly transparent:  plaintiff's ability to do laundry and play his guitar seem appear inconsistent with his reported inability to lift more than a "couple" pounds; his ability to walk into the YMCA, see friends and do chores around the house appear inconsistent with his reported inability to walk more than 50 feet; and his ability to play chess, watch TV and teach guitar lessons seems inconsistent with his reported inability to sit for more than 20 minutes.  In addition, plaintiff's daily activities were only one of a number of reasons why the administrative law judge thought his subjective complaints were not entirely credible.  In sum, I am not persuaded that the administrative law judge was patently wrong in his evaluation of plaintiff's daily activities.

18

Plaintiff also argues that the administrative law judge erred in rejecting the allegation plaintiff reported on one of his disability forms, that he could sit for only 20 minutes at a time, on the ground that plaintiff was able to sit through the 30-minute hearing without noticeable distress. Plaintiff points to a different form where he reported that he could sit for 30 minutes, not 20, and notes that he testified that he could sit for 20-30 minutes; therefore, says plaintiff, there was no inconsistency. That at some times plaintiff may have said he could sit for 30 minutes, however, is not the point. Instead, the administrative law judge appears to have been making the point that plaintiff had a tendency to exaggerate the severity of his limitations. Although reasonable people could disagree, I am not convinced that it was patently wrong for the administrative law judge to draw this conclusion. Furthermore, the administrative law judge did not rely solely on this inconsistency in rejecting plaintiff's alleged sitting limitations. He also pointed out that plaintiff's pain had improved on Enbrel; Dr. Navarro had observed good musculoskeletal stability without swelling or restricted motion; and there were no medical opinions contracting the conclusion of the disability determination service physicians that plaintiff could perform sedentary work. All together, this evidence provides reasonable support for the administrative law judge's decision to reject plaintiff's alleged sitting limitations.

I have considered plaintiff's remaining objections to the credibility determination, dkt. #13, at 15-18, but none are persuasive. The administrative law judge adequately explained his conclusion and offered reasons, grounded in the evidence, for his

19

determination.  Accordingly, there is no reason to reverse his credibility determination or the corresponding residual functional capacity assessment.

### D.  Step Five:  Jobs in the Regional or National Economy

A plaintiff seeking Supplemental Security Income bears the burden of proof at steps one through four of the sequential five-part inquiry, but the burden shifts to the commissioner at step five.  Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).  At this final step, the commissioner must establish that the plaintiff's residual functional capacity allows him to engage in work found in significant numbers in the national economy.  Liskowitz v. Astrue, 559 F.3d 736, 742–43 (7th Cir. 2009); 20 C.F.R. §§ 416.920(f), 416.966.

Social Security Ruling 00–4p explains that in meeting her burden at step five, the commissioner can rely on information contained in the Dictionary of Occupational Titles. The Dictionary, published by the Department of Labor, gives detailed physical requirements for a variety of jobs.  The Social Security Administration has taken "administrative notice" of the Dictionary.  20 C.F.R. § 416.966(d)(1).  Alternatively, the commissioner may rely on information provided by a vocational expert.  SSR 00–4p.  However, an administrative law judge who takes testimony from a vocational expert about the requirements of a particular job must determine whether that testimony is consistent with the Dictionary.  Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).  The ruling states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any

possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00–4p.

The ruling explains that because the <u>Dictionary</u> "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," a vocational expert may be able to provide more specific information about jobs than that provided by the <u>Dictionary</u>.  <u>Id</u>.  "Information about a particular job's requirement or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [vocational expert's] experience in job placement or career counseling."  <u>Id</u>.  When there is a conflict between the vocational expert's testimony and the <u>Dictionary</u>, the administrative law judge is free to rely on the vocational expert's testimony so long as the administrative law judge determines that "the explanation given by the [vocational expert] is reasonable and provide[ ] a basis for relying on [that] testimony rather than on the DOT information."  <u>Id</u>. In <u>Prochaska</u>, 454 F.3d at 735, the court of appeals made clear that the burden of inquiring into and resolving apparent conflicts between the vocational expert's testimony and the <u>Dictionary</u> is on the administrative law judge.

In this case, plaintiff argues that the vocational expert's testimony "was both an estimate and diverged from the DOT[,] [y]et the ALJ clearly failed to obtain a reasonable

21

explanation for the apparent conflict pursuant to SSR 00-4p." Dkt.#13, at 19.  It is true that the administrative law judge failed to ask the vocational expert to explain the foundation for his conclusion that there were some unskilled, sedentary jobs that did not require frequent bilateral reaching.  This step is necessary, however, only if the vocational expert's testimony diverged from the <u>Dictionary</u>, as plaintiff appears to assume.  In his written decision, however, the administrative law judge found that the expert's testimony was *consistent* with the <u>Dictionary</u>.  If the administrative law judge was correct, then there would have been no reason for him to obtain a "reasonable explanation" for the conflict.

Unfortunately, there is no way to know conclusively whether the vocational expert's testimony gave rise to a "conflict" with the <u>Dictionary</u> requiring further explanation because the administrative law judge failed to make the inquiry mandated by SSR 00-4p.  Moreover, even assuming there was no conflict *per se*, providing "[i]nformation about a particular job's requirement or about occupations not listed in the DOT," SSR 00-4p, is the type of vocational expert testimony that ought to trigger further inquiry by the administrative law judge.

In either case, the administrative law judge erred.  By failing to ask the vocational expert whether his testimony was consistent with the <u>Dictionary</u>, the administrative law judge failed to ensure that the testimony was well-founded.  Compounding this mistake, the administrative law judge elicited no information from the vocational expert to explain *how* he knew that certain Order Clerk and Receptionist and Information Clerk jobs could be performed without frequent reaching with the non-dominant arm.  Presumably, it was based

on the vocational expert's experience, but the vocational expert never said that because, again, no one asked him.  Compare Melton v. Astrue, 06-C-0427-C, 2007 WL 5555952, *5 (W.D. Wis. June 8, 2007) ("Brezinski's unchallenged qualifications, in conjunction with his explanation that his testimony regarding the availability of work available to someone with plaintiff's limitations was based upon his experience, were sufficient to meet the commissioner's burden at step five of the sequential evaluation.").  Accordingly, I agree with plaintiff that the administrative law judge failed to meet his "affirmative responsibility" to inquire about any conflicts with the Dictionary and obtain a reasonable explanation for such conflicts.

I am less persuaded by plaintiff's challenge to the reliability of the vocational expert's testimony concerning the *numbers* of jobs that fit the administrative law judge's hypothetical. Although SSR 00-4p imposes a duty upon administrative law judges to explore potential conflicts between vocational expert testimony and the Dictionary with respect to "the requirements of a job or occupation," it does not impose a similar obligation with respect to vocational expert testimony concerning the number of jobs that are available.  To the contrary, administrative law judges are entitled to accept even conclusory, "bottom-line" testimony from vocational experts if no one challenges that testimony at the hearing. McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004) (citing Donahue, 279 F.3d at 446).

Here, plaintiff stretches too far when he suggests that the two questions asked on cross-examination were a "challenge" to the vocational expert's testimony.  Notably, after

23

confirming that the vocational expert's job numbers were a mere estimate, plaintiff did not ask any follow-up questions that called the reliability of this estimate into dispute or ask the expert to provide any studies, statistical data or even personal experience to support his testimony.  Thus, this is not a case where the claimant was thwarted in his demands for the data and reasoning underlying the vocational expert's testimony.  McKinnie, 368 F.3d at 911 (quoting Donahue, 279 F.3d at 446).  To the contrary, plaintiff appears to have accepted the vocational expert's bottom line without question.

Nonetheless, it is not necessary to resolve this particular issue.  Not only do I find that the administrative law judge erred in failing to make the inquiry demanded by SSR 00-4p with respect to the Dictionary, but the commissioner has waived any challenge to any part of the step five determination by failing to address plaintiff's arguments.  The commissioner offers only the puzzling argument that this court should uphold the step five determination because "[t]he controlling hypothetical question reasonably accounted for Johnson's credible functional limitations."  Br. in Opp., dkt. #14, at 9.  This is a non-sequitur.  Plaintiff does not object to the form of the hypothetical.  That the hypothetical reasonably accounted for plaintiff's functional limitations says nothing about whether the vocational expert had a reliable foundation for his conclusions or whether the administrative law judge was obligated to make further inquiry.  To be sure, plaintiff's step five argument is not a model of clarity, but the commissioner's response is so far off the mark that one wonders if her lawyers even read plaintiff's brief.

In the absence of any legitimate objection from the commissioner to plaintiff's valid step five challenge, I conclude that plaintiff's case must be remanded to the commissioner for a new step five determination that complies with SSR 00-4p and is founded upon reliable evidence.

ORDER

IT IS ORDERED that plaintiff Dean Johnson's motion for summary judgment, dkt. #12, is GRANTED and, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is REVERSED AND REMANDED to the commissioner for a new step five determination.  The decision is affirmed in all other respects.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 29th day of October, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge